UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

CPM CORPORATION LIMITED,

                Plaintiff,           07 Civ. 552

  -against-                          OPINION

PROMINENT SHIPPING PTE LTD. and
AUSTIN NAVIGATION SINGAPORE PTE LTD.
a/k/a AUSTIN NAVIGATION INC.,

                Defendants.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        LENNON, MURPHY & LENNON, LLC
        420 Lexington Avenue, Suite 300
        New York, NY  10170
        By:  Kevin J. Lennon, Esq.
             Nancy R. Siegel, Esq.

        Attorneys for Defendants

        CARROLL, MCNULTY & KULL LLC
        570 Lexington Avenue, 10th Floor
        New York, NY  10022
        By:  Christoher H. Mansuy, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/12/09

**Sweet, D.J.**

Defendants Prominent Shipping PTE Ltd. ("Prominent") and Austin Navigation Singapore PTE Ltd., a/k/a Austin Navigation Inc. ("Austin") (collectively, the "Defendants") have moved under Rule E(4)(f), Supplemental Rules for Certain Admiralty and Maritime Claims, to vacate this Court's January 24, 2007 order of attachment ("January 24 Order") obtained by plaintiff CPM Corporation ("CPM" or the "Plaintiff"). Upon the facts and conclusions set forth below, the motion is granted and the January 24 Order is vacated.

## I.  PRIOR PROCEEDINGS

The complaint of CPM was filed on January 24, 2007 alleging breach of a charter party for the hire of the M/V LEONIS (the "Vessel"), dated September 4, 2006, between CPM and Prominent, the owner of the Vessel.

The January 24 Order was issued ex parte and funds of the Defendants were restrained in the amount of $25,318.50 on January 28, 2007; $103,225.00 on February 26,

2007; $30,249.12 on April 4, 2007; and $43,798.00 on December 11, 2007.

On June 13, 2008, a portion of the $103,225.00 sum was released by an order of this Court in light of a compromise reached between Plaintiff and claimant B.M. Shipping Group S.P.A.

The instant motion was marked fully submitted on June 24, 2009.

## II.  **THE FACTS**

The following events are set forth in the affidavits submitted by counsel and the accompanying exhibits.  On September 4, 2006, Plaintiff CPM chartered the Vessel from Defendant Prominent.  On October 30, 2006, CPM subchartered the Vessel to non-party Libra Shipping Services.  A dispute subsequently arose as a result of Prominent's allegedly improper refusal to allow the Vessel to carry certain cargo to Japan as requested by Libra.  The Vessel was then arrested by Libra, which the Complaint alleged resulted in considerable damages to CPM including, but not limited to, loss of pre-paid hire and bunkers

2

supplied to the Vessel.  CPM commenced arbitration against Prominent in Hong Kong, alleging breach of the CPM-Prominent charter party.

On January 23, 2008, Libra initiated an arbitration in London against CPM for $339,986.25 arising from Prominent's refusal to allow the Vessel to ship Libra's cargo to Japan.  Since June 20, 2008, no action has been taken by Libra or CPM with respect to this arbitration.

On April 4, 2008, following the redelivery of the Vessel to its then-owners, CPM paid $104,576.39 to Prominent pursuant to the CPM-Prominent charter party in full and final satisfaction of the Statement of Account.  Consequently, Plaintiff concedes that there is no longer any hire dispute or bunker claim between the parties.

No action has been taken by CPM in the Hong Kong arbitration with Prominent.

**III. DISCUSSION**

On a motion to vacate, the Court looks not to the merits of the underlying claim, but to whether the requirements of the Supplemental Rules have been met, including the pleading requirements. See Navision Shipping A/S v. Yong He Shipping (HK) Ltd., 570 F. Supp. 2d 527, 533 (S.D.N.Y. 2008) ("As to [Defendant's] contention that the Court should dismiss the underlying action pursuant to Rule 12(b)(6), or in the alternative grant summary judgment, the argument is misplaced. It makes little sense to apply Rule 12(b)(6) or Rule 56 here. The merits are not being adjudicated in this case.").

An attachment pursuant to Rule B may issue if the plaintiff seeking the attachment meets the filing and service requirements of Rules B and E and shows that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Further, "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E." Id.

4

at 445 n.5.  Consequently, "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." Aqua Stoli, 460 F.3d at 445.

Once a plaintiff has made such showing, a properly issued attachment order may be vacated if "1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." Id.  While it is a plaintiff's burden to prove that it has complied with the technical requirements of Rule B, it is the moving party's burden to prove one of the limited equitable bases for vacatur. Id.

The parties do not dispute that there no longer exists any claims for loss of pre-paid hire or bunkers supplied to the Vessel.  Consequently, the only remaining basis for the Rule B attachment is CPM's claim against Prominent for CPM's potential liability to Libra arising out of the arbitration between Libra and CPM.

5

This claim is properly viewed as an indemnity claim for damages that CPM might incur at some future time as a result of its arbitration with Libra. The verified complaint, however, fails to allege claims for damages based on <u>future</u> liability. Rather, the Complaint alleges that Plaintiff "<u>has</u> sustained considerable damages." <u>See</u> Complaint ¶ 9 (emphasis added); <u>see also</u> Complaint ¶ 10 (alleging that plaintiff "has sustained damages"). While Plaintiff correctly notes that the Complaint bases its request for relief on other, unspecified damages besides loss of pre-paid hire and bunkers supplied to the Vessel, those damages are, by the terms of the Complaint, limited to those that CPM suffered prior to the filing of the Complaint. Here, the Rule B complaint was filed on January 24, 2007, nearly a year to the day before arbitration proceedings were initiated by Libra against CPM.[1] Consequently, CPM cannot rely on the Complaint as the basis for an attachment of funds against any future liability that may result from its arbitration with Libra.[2]

---

[1] A Rule B complaint must be assessed as of the date of filing. <u>Glory Wealth Shipping Serv. Ltd. v. Five Ocean Corp.</u>, 571 F. Supp. 2d 531, 541 (S.D.N.Y. 2008).

[2] CPM asserts that ¶ 14 of the Complaint demonstrates that CPM contemplated arbitration with Libra at the time the Complaint was filed. While Plaintiff's estimation of damages in ¶ 14 of the Complaint includes "Costs incurred in arbitration against Libra," this single line item, in light of the Complaint as a whole, cannot be said to sufficiently plead damages to CPM arising from a future adverse arbitration decision in the CPM-Libra arbitration. Moreover, as

6

Furthermore, as the Court held in <u>Beluga Chartering GMBH v. Korea Logistics Sys. Inc.</u>:

> In general, courts in this circuit have not been receptive to contingent indemnity claims as basis for maritime arrests or attachments.
>
> * * *
>
> KLS [the indemnor] does not assert that it has made any payment to Samsung [the indemnee] or even that Samsung has initiated an action against KLS. As such, KLS's indemnity claim is unripe, and therefore not a valid prima facie maritime claim within the meaning of Rule B.

589 F. Supp. 2d 325, 330 (S.D.N.Y. 1998) (internal cites omitted); see also <u>Sanko Steamship Co., Ltd. v. China Nat'l Chartering Corp.</u>, 536 F. Supp. 2d 362, 366-67 (S.D.N.Y. 2008) (noting "precedent in both this District and elsewhere that an indemnity claim under the ICA is not ripe until the underlying cargo claim has been paid"); <u>J.K. Int'l, Pty., Ltd. v. Agriko S.A.S.</u>, No. 06 Civ. 13259 (KMK), 2007 WL 485435, at *4-5 (S.D.N.Y. Feb. 13, 2007) (declining to continue attachment based on charterers' unripe indemnity claims against cargo receivers in absence of evidence

---

discussed <u>infra</u>, attachments based on contingent indemnity claims are disfavored by courts in this circuit.

7

that the ship owner intended to press a demurrage claim against charterer); Bottiglieri Di Na Vigaizione Spa v. Tradeline LLC, 472 F. Supp. 2d 588, 591 (S.D.N.Y. 2007) (vacating attachment relying on indemnity claims that included potential liability, fees, and costs of ongoing arbitrations); Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA, No. 05 Civ. 4550 (DC), 2005 WL 2218025, at *2 (S.D.N.Y. Sept. 9, 2005) (holding that indemnity claim based on costs and fees associated with an arbitration that had not yet been initiated was too speculative to support attachment).

In Bottiglieri, the Honorable Lewis A. Kaplan considered when an indemnity claim would accrue under English law. There, the defendant had entered into a charter party with the plaintiff for the transportation of cargo. The plaintiff, in turn, entered into another charter party with the owner of the vessel. Following the unsatisfactory delivery of the cargo, the owner paid the receiving party $2 million and announced its intention to seek indemnification from the plaintiff. The plaintiff, in turn, commenced arbitration proceedings against the

8

defendant for the claims asserted by the owner of the vessel against it.  The plaintiff then obtained an attachment for the defendant's funds which the defendant subsequently moved to vacate.  Much like the present circumstances, little progress on the arbitrations had been made, and there had not yet been findings that the plaintiff was liable to the owner for damages.  See id. at 589.  Similarly, the plaintiff in Bottiglieri urged that its claim should be construed as a breach of contract claim, while the defendant argued that plaintiff's claim constituted an unripe indemnity claim.  Id.

Upon examination of the seminal English case addressing accrual of indemnity claims, Telfair Shipping Corp. v. Intersea Carriers SA (The "Caroline P"), [1984] 2 Lloyd's Rep. 466, Judge Kaplan concluded that the plaintiff's claim was properly viewed as one for indemnification for damages sought by the owner against the plaintiff.  Bottiglieri, 472 F. Supp. 2d at 590-91 (noting that the allegations in the complaint "trace the bulk of the monetary claim made against defendant to the damages claimed by the Owner").  Given the incomplete nature of the

9

arbitration proceedings between the owner and the plaintiff, the court concluded that the claim for indemnity was not ripe under English law, and the attachment was vacated. Id.

In light of the analogous circumstances presented here, a similar result is warranted. CPM's London solicitor states in paragraph eight of his declaration that on January 23, 2008 "[p]laintiff was served with the arbitration submission of Libra which details claims of $339,986.25 but that Libra has not presented a claim or damages in a way that has satisfied CPM." The inability of CPM to quantify its claim is dispositive here and demonstrates that its claim against Prominent constitutes an indemnity claim is not yet ripe. Consequently, CPM has failed to set forth a valid prima facie maritime claim upon which a Rule B attachment may be based.

**Conclusion**

Because the claim on which the attachment was based has been resolved, the January 24 Order is vacated.

It is so ordered.

New York, NY
November 6, 2009

ROBERT W. SWEET
U.S.D.J.

11